## Cummings *versus* The City of Williamsport.

1. In opening Packer street, in the city of Williamsport, viewers were appointed to assess damages and contributions to owners of land along said street. The street was opened upon the petition of the city. C., through whose land it was opened, was the only party who appealed from the award. By the provisions of the Act of 22d of April 1856, under which the proceedings were had, all the other parties having acquiesced in the award, were concluded. After confirmation of the report of viewers by the Quarter Sessions, C. appealed, under the Act of 13th of June 1874, to the Common Pleas, who directed an issue to be framed, with C. as plaintiff and the city and the other owners along said street as defendants. *Held,* that the rights of these individual defendants had been adjusted by the report of the viewers, and the decree of the Quarter Sessions thereon, and their joinder as parties with the city, was a ground for reversal, had the question been properly raised.

2. Where the direct tendency of evidence is to lead the minds of the jury into an irrelevant inquiry, it should be rejected.

3. Under this issue one of the individual defendants was offered to prove a conversation with plaintiff in reference to the opening of said street, wherein plaintiff agreed that if defendant would not press the opening of another street to run east and west through the same land, the plaintiff would open Packer street at his own expense, and that in consequence defendant made certain improvements on his property and desisted from urging the opening of the street to run east and west. *Held,* that while this agreement would have been binding in a controversy between plaintiff and witness, it did not work an estoppel in favor of the city, unaccompanied as it was with any proof that the municipal authorities had done any work in pursuance of it, and that the offer, therefore, was clearly inapplicable to the actual issue.

4. In estimating the damages sustained by the opening of a street the proper measure is the difference between what the property would bring in the market before the improvement, and what after the improvement was made, without reference to the purpose for which it may be used.

June 6th 1877. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ. SHARSWOOD, J., absent.

Error to the Court of Common Pleas of *Lycoming county :* Of May Term 1877, No. 156.

This was an issue framed for the purpose of ascertaining the amount of damages to which A. B. Cummings, the plaintiff, was entitled, for the appropriation of about one acre and a quarter of his land for the purpose of opening a public street through it.

Cummings owned a tract of about forty acres of land lying immediately north of the old borough of Williamsport, which by the enlargement of the borough was afterwards included within its limits, as was also a tract of land adjoining it on the north belonging to Joseph Gilmore and others, who had divided up their land into building lots. Mr. Cummings had used and cultivated his tract as a farm. At the time Gilmore and the others purchased the farm of Cummings laid between their purchase and the borough and being desirous of extending Packer street, which ran north and south and terminated at Mr. Cummings's southern line, they applied to the Quarter Sessions for a view for the extension of said street through the tract of Cummings, in which effort they

[Cummings v. City of Williamsport.]

failed for want of jurisdiction in the court. Meantime the city of Williamsport had been incorporated and they then applied to the city council, and on the 28th of August 1875 a petition of the mayor and a majority of the city council was presented to the Court of Quarter Sessions, under the provisions of the Act of the 22d of April 1856, Pamph. L. 525, praying for the appointment of viewers for the extension of said street, who were duly appointed and who reported that none of the parties along said street had sustained any damages by reason of the opening thereof.

To this report exceptions were filed by Cummings, which were overruled *pro forma* and the report confirmed. Cummings then appealed to the Court of Common Pleas, which court on motion of Gilmore and others ordered a feigned issue to be framed, in which Cummings was made plaintiff and the city of Williamsport, Gilmore and others, defendants.

Cummings contended that the issue between him and the city was a *real* issue between the parties—not a *feigned* issue—the right to which was secured to him by article 16, section 8, of the Constitution of Pennsylvania, and by the Act of 13th June 1874, Pamph. L. 283, which regulates the mode by which a party whose property has been taken for public use by a municipal corporation can avail himself of his right to a trial by jury, and he therefore asked for a rule to strike off this feigned issue, which rule after argument was made absolute and the case put down for trial.

At the trial, before Gamble, P. J., the plaintiff proved the value of the land, the cost of paving and fencing, and the damages sustained.

The defendants made the following offer :—

To prove by Joseph Gilmore, that after the plaintiff had plotted his land and located on said plot the extension of Packer street, at the point where the same is now located, and before witness had plotted his on the north side of and adjoining plaintiff's land, witness had a conversation with plaintiff at his room in reference to the opening of this street, and in such conversation plaintiff agreed that if witness would not press the opening of the street running east and west, plaintiff would open this street at his own expense, and that witness should make his plot to correspond with plaintiff, so that they would have no difficulty about the streets ; that witness accepted said proposition and plotted his land accordingly, and caused certain buildings to be erected on the line of this street, and desisted from urging the opening of the street running east and west.

Plaintiff objected: 1. Because conversations between plaintiff and the witness cannot be received in evidence to affect the claim of plaintiff against the city of Williamsport; 2. Because the conversation, if proven, cannot affect the plaintiff in this stage of the proceedings, the issue to ascertain damages having been formed

without objection by defendants, and that the issue as joined does not raise any question of estoppel or release, and the defendants, if they sought to take advantage of the alleged contract, should have objected to the formation of the issue, or at least had it so framed as to raise the question and give notice to plaintiff of such a defence; 3. The evidence is irrelevant.

The objections were overruled and the evidence admitted, limited to the extent to which it might affect the question of contribution by the defendants, other than the city of Williamsport. Exception and bill sealed.

The court, in their general charge, said :—

" The first question that will be submitted to you, and the first in importance is : What amount of damages, if any, is Mr. Cummings entitled to from either of these defendants ? The measure of damages in such cases is ascertained by the difference between the value of the land immediately before the opening of the public improvement and its market value immediately after, and the purpose for which it may be used is not material. It is true that witnesses may speak of the purposes for which it may be used. They may give that as a reason for estimating the value that they attach to it, but the standard measure of damages is its market value—what it would bring in the market; and the difference between what it would bring in the market before the improvement and what after the improvement was made, is the proper measure of damages to guide a jury."

And also :—

" While it may be true that for agricultural and farming purposes it would bring less with the street across than without it, yet it may also be true that for other purposes it would bring more. Well, the question is—and you will bear that constantly in mind—would it bring more in the public market ? In the estimate of the public, would it bring more or less ? That is the test. Not whether it would bring more for one purpose or another purpose, but would it bring more in the public market for any purpose to which the owner or purchaser should see proper to put it ? If you are satisfied from all the evidence that this land would bring more in the public market with that street than it would have brought without the street, then we think the plaintiff is not entitled to any damages at all."

And also :—

" If you should come to the conclusion that Mr. Cummings is entitled to damages, then we think you have the right to assess them upon these co-defendants. And when you come to consider them there is an item of evidence here that is perhaps worthy of consideration.

" Mr. Gilmore, you will recollect, testified that about the time they were contemplating laying out their lands into lots and opening up

streets, he had an interview with Mr. Cummings, and that in that interview Mr. Cummings agreed to open this street at his own expense, and that he enjoined upon Mr. Gilmore the duty of laying out his lots so that the streets would correspond, so that when his land was laid out it might correspond with the streets and lots laid out by Mr. Gilmore, that there might be no confusion or jogging in the streets. Now, if you believe, from all this testimony, that Mr. Gilmore was induced to lay out his lots in consequence of that arrangement, we think it is a proper subject of consideration as between Mr. Cummings and these defendants when you come to fix the amount, the proportion of these damages that they should pay."

The verdict was for the defendants, and the plaintiff took this writ, assigning for error, 1. That the court erred in directing the feigned issue; 2. In making absolute the rule to strike it off; 3. In admitting the evidence under the above offer; 4, 5, 6. The portions of the charge noted in their order; 7. The court erred in instructing the jury that Mr. Gilmore had testified that Mr. Cummings had agreed to open the street at his own expense, as set forth in the quotation from the charge in the last preceding error, and refusing to grant a new trial upon the ground of this misdirection, Mr. Gilmore not having testified to any such fact, as the following extract from his testimony will show : " Well, in this conversation there Mr. Cummings said, 'If you do not press the opening of Adams street I will open Packer street;' and we said we would not at that time ; that is about the conversation we had in regard to the street."

*Allen & Gamble* and *Armstrong & Linn*, for plaintiff in error. —The constitution provides compensation for private property taken for public use, and prohibits the General Assembly from depriving any person of an appeal from any preliminary assessment of damages, which appeal, on demand from either party, must be determined by a jury, according to the course of the common law, and to meet this constitutional requirement the Act of 13th of June 1874, Pamph. L. 283, was passed. The issue ordered by the court was a real one, touching a real injury and a substantial right, and when the appeal was entered there was nothing to prevent the joinder of a real issue, alleging the grievance on the part of the plaintiff, and his claim of damages against the city, the party committing the injury, and the plaintiff would thus have been accorded his constitutional right. The order was likewise erroneous, Cummings being the only appellant, the other property holders being content with the report of the viewers, he and the city were the only proper parties to the appeal, and Cummings had a right to have the amount of damages determined between him and the city,

[*Cummings v. City of Williamsport.*]

without encumbering the record with the names of other parties, who had not joined in the appeal.

It was erroneous to admit the evidence of Gilmore. It could not possibly affect the right of recovery against the city. There was no dedication to public use, and the promise, even in the broad form of the offer, could not operate as an estoppel. It is clear the city cannot avail herself of such a promise as against Cummings, and it is just as clear that it cannot affect her claim for contribution, because she was not a party to the alleged arrangement.

The court misdirected the jury in stating what was the measure of damages.

*John J. Metzger* and *C. Bartles, Jr.*, for defendants in error.— In admitting the testimony of Gilmore the court limited it to the extent to which it might affect the question of contribution by the defendants other than the city. The jury were bound to consider the advantage of the opening of the street to Cummings, as well as its benefits to defendants, and when Gilmore was asked to contribute to the damages sustained by Cummings, was he not to be permitted to give evidence to affect the plaintiff's claim, so far as his contributive share was concerned?

The instruction as to the measure of damages was clearly within the rulings of this court: Shenango and Allegheny Railroad Co. *v.* Braham, 29 P. F. Smith 447; Harvey *v.* Lackawanna and Bloomsburg Railroad Co., 11 Wright 436; Hornstein *v.* Atlantic and Great Western Railroad Co., 1 P. F. Smith 87, and cases cited.

Mr. Justice WOODWARD delivered the opinion of the court, Octo-1st 1877.

From the report of the viewers appointed to adjust the damages and contributions payable and chargeable to the owners of land along the extension of Packer street, in the city of Williamsport, A. Boyd Cummings, the plaintiff below and here, was the only appellant. When the issue was directed by the Court of Common Pleas, there was no other controversy than that between the plaintiff and the city. The second section of the supplementary borough Act of the 22d of April 1856, made every report of viewers to assess damages and contributions final and conclusive on all parties after approval and confirmation by the proper Court of Quarter Sessions. The only control over the action of the viewers consisted in the power of the court to modify the report "on the hearing of such parties as should choose to contest the same." The Act of the 15th of January 1866, incorporating the city of Williamsport, made no change in the law regulating the opening and extension of the highways of the municipality. The tenth section preserved all unsupplied statutes, ordinances, by laws, rules and

[Cummings v. City of Williamsport.]

regulations of the borough in full force. And the eleventh section transferred all the powers which had been exercised by the burgess of the old borough to the mayor of the new city. The Act of the 13th of June 1874, gave to any party to a proceeding to assess damages against any corporation or individual invested with the privilege of taking private property for public use, the right to appeal to the Court of Common Pleas of the proper county. Under the Act of 1856, the record made up in the Quarter Sessions was conclusive on all the parties interested in the Packer street extension, who acquiesced in the report of the viewers and the judgment of confirmation. No question remained open between the individual defendants and the city, and the plaintiff had no controversy with them. There was but a single issue—that in which the title of the plaintiff to damages was involved. The rights of the individual defendants had been adjusted by the report of the viewers and the decree of the Quarter Sessions, and their joinder as parties to the issue made a confused and incongruous record, and necessarily produced on the trial embarrassing and awkward consequences. The question submitted in terms to the jury was: "What amount of damages, if any, is Mr. Cummings entitled to from either of these defendants?" The plaintiff's right to appeal under the Act of 1874, was against the city of Williamsport as " a corporation invested with the privilege of taking private property for public use." The other parties possessed no such privilege. They were mere owners of property affected by the opening of the street. Between them and the plaintiff there was no privity, and against them he could assert no common law, statutory or contract claim. In essential results, the circumstances of this case are identical with those developed in the Matter of the Opening of Park Avenue, in 2 Norris 167, and the principles settled there are directly applicable here. The joinder of the individual defendants with the city would be ground for reversal if it could be gathered from the paper-books that the question had been duly raised. The order for a feigned issue was stricken off on the plaintiff's application, and he apparently acquiesced in the order for the real issue. At least, although that order is made the subject of the first assignment of error, there is no record of any objection made to it when it was filed, and no complaint was made on behalf of the defendants themselves. The irregularity is beyond present reach.

But while the form of the issue embraced unnecessary parties, the actual question remained unchanged. The plaintiff's land had been appropriated for the highway, and he claimed damages for the injury alleged to have been sustained. In the course of the trial, the defendants offered to prove by Joseph Gilmore that " after the plaintiff had plotted his land and located on said plot the extension of Packer street at the point where the same is now located, and before the witness had plotted his on the north side of and adjoining

plaintiff's land, he, the witness, had a conversation with the plaintiff in reference to the opening of the street, and the plaintiff agreed that if he, Gilmore, would not press the opening of the street running east and west, he, the plaintiff, would open this street at his own expense; and that he, Gilmore, accepted the proposition, plotted his land accordingly, caused certain buildings to be erected on the line of this street, and desisted from urging the opening of the street running east and west." The third error has been assigned to the admission of this offer. Was it relevant? The agreement would have been undoubtedly binding in a controversy between the plaintiff and the witness. But it does not follow that the evidence, standing alone, would work an estoppel in favor of the city. It was not proposed to couple it with any proof that any act had been done by the municipal authorities in pursuance of the arrangement, or that it had even been known to them. Indeed, the inapplicability of the offer to the real issue pending was distinctly ruled by the court below. The jury were charged on this point in these terms: "If you believe from all this testimony that Mr. Gilmore was induced to lay out his lots in consequence of that arrangement, we think it a proper subject of consideration as between Mr. Cummings and these defendants when you come to fix the amount, the proportion of these damages that they should pay. I do not myself attach much importance to this evidence, and think it only applicable to that question. I do not think it is at all applicable to the question of damages to be paid by the city, because I do not see that Mr. Cummings waived any right that he might have to claim damages from the city by that interview with Gilmore." If the settlement of the equities between the city and the individual defendants could have been projected into the contest in such a way as to make them liable to the plaintiff for any damages he might recover, the fact that Gilmore was one of the defendants would perhaps have made the evidence competent. But it had no bearing on the question between the parties actually litigant. Mr. Justice BURNSIDE said in Bratton v. Mitchell, 3 Barr 44, that "In Pennsylvania it has become a great evil in the administration of justice, the offering and frequently giving irrelevant evidence. The object is often to raise a false issue before the jury. The evidence should be confined to the question trying; then the court and jury would not be perplexed and embarrassed with irrelevant matter." Facts which of themselves can have no legitimate operation cannot be received in evidence, because the jury might possibly infer other facts which, in connection with them, would support the issue: Weidler v. The Farmers' Bank of Lancaster, 11 S. & R. 134. Evidence is not admissible to excite prejudices in the minds of a jury, or merely to allay those which it is supposed they may possibly entertain: Hill v. Meyers, 7 Wright 170. Here the direct

[Cummings v. City of Williamsport.]

tendency of the evidence was to lead the minds of the jury into an irrelevant inquiry, and the offer should have been rejected.

As the whole evidence of Mr. Gilmore was incompetent, discussion of the point raised by the sixth and seventh assignments of error would be surperfluous. But it may be said, that an inadvertent statement to the jury, that an agreement on the part of Mr. Cummings to open the street at his own expense, had been testified to, when no testimony as to such an agreement had been given, would be capable of affecting the interests of the plaintiff in a most damaging and disastrous way.

In The Shenango and Allegheny Railroad Co. v. Braham, 29 P. F. Smith 447, the judgment was reversed because the jury had been instructed to regard only such advantages and disadvantages from the road of the defendants as resulted to the plaintiff as a farmer, and to his land as a farm. In entering the judgment of this court, it was held that everything that gives intrinsic value to land is a proper consideration in estimating its market value. The rule by which the jury in this case were instructed to ascertain the plaintiffs' damages, was entirely accurate, and the fourth and fifth assignments of error, in which that instruction is complained of, are unsustained.

Judgment reversed, and *venire facias de novo* awarded.