G. G. O'Brien and W. J. Wright *v.* The Schenley Park & Highlands Railway Company, Appellant.

*Railroads—Eminent domain—Damages—Evidence.*

In an action to recover damages for injuries to land caused by the construction of a railroad, where it appears that the land was divided by a street into two portions, through one of which alone the railroad was constructed, and plaintiffs alleged in court that no injury was done to the other, although their statement claimed damages to the entire property, it is not error to admit evidence that the injury was confined to the portion of the property through which the railroad was laid, that being the injury to the whole, and the verdict barring any further claim.

*Eminent domain—Evidence—Competency of witness.*

A witness is competent to express an opinion of the value of the property in condemnation proceedings who has an intelligent comprehension of the subject, and who has obtained knowledge of the value of the property in the neighborhood merely in a general way, by making inquiries, so as to make himself generally informed on the subject, or who obtains his knowledge as a county commissioner, by hearing returns of assessments and putting values on properties.

*Railroads—Eminent domain—Evidence—Opinion of witness.*

Where a railroad is located through a large piece of ground situate on the public street of a large city, the owner may be permitted, in condemnation proceedings, to inquire of a witness as to the value of the land, considering that it was possible to lay it out in lots.

In condemnation proceedings, evidence by a third party of the value which a former owner placed upon the land is irrelevant, if it is not offered to contradict previous testimony. The best evidence of the former owner's estimate of its value is his own testimony.

Argued Oct. 27, 1899.   Appeal, No. 109, Oct. T., 1899, by defendant, from judgment of C. P. No. 3, Allegheny Co., May T., 1894, No. 211, on verdict for plaintiffs.   Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ. Affirmed.

Appeal from jury of view.

At the trial it appeared that the defendant laid out a railroad through a tract of land consisting of about two and one half acres on the left side of Ford street in the city of Pittsburg. Plaintiff also owned about two acres on the right side of Ford street.   The two pieces were originally one tract which was divided by Ford street.   In their statement plaintiffs claimed damages for the whole tract, but at the trial they alleged that there was no injury done to the land on the right side of the street.

At the trial E. M. Behen, a witness called by plaintiffs, testified as follows:

"Q. In 1889 would you be able to state what the value of that property was?   A. Well, from my general knowledge of the business as regards property in general, I would.   Q. Take that property on the left-hand side, a little over two acres—two acres and a half; you know the property since about 1888, I suppose? A. Yes, sir.   Q. What would you say was the fair value of that property as it stood immediately before this railroad was constructed; that would be in the summer of 1889?   I don't want you to take into consideration the laying out into lots, but the possibilities that that could be done, and the possibilities of developing the property."

Objected to, first, because the witness has not shown sufficient knowledge of the property to enable him to give an opinion; second, because the property touching which the inquiry

is made is not all of the property described in the plaintiffs' petition and declaration; and third, because the possibilities of the property are entirely too speculative to furnish any basis for estimating value.

The Court: You haven't asked him, Mr. Rodgers, as to his knowledge of values in that neighborhood.

Mr. Rodgers, of counsel for plaintiffs: " Q. What knowledge did you have of value of property in that neighborhood? A. The knowledge I had of property in that neighborhood was obtained merely in a general way, as a real estate man generally does, by making inquiries as to value and ascertaining what property is worth, and making myself generally informed as to real estate. Q. And you did inform yourself in that way in relation to the values of property in that neighborhood? A. Yes, sir. Q. Well, now, in view of that, I want to ask you what you would say as to the value of the property on the left-hand side, immediately before this railroad was constructed?"

Objected to for the reasons given in the last preceding objection. Objections overruled. Bill sealed for defendant. [3]

D. McWilliams, a witness for plaintiffs, stated that he had known the property for ten or twelve years.

Mr. Rodgers: "Q. Well, had you any knowledge of the value of property in that neighborhood, say, in the summer of 1889? A. I had. Q. How did you acquire that knowledge? A. Well, I acquired that knowledge in the commissioner's office when I was there—putting values on properties and hearing the returns of the assessments from different wards. Q. Well, are you able to state what the market value of this property was immediately before the railroad was constructed through it? A. Yes, sir; I think I am. Q. What in your judgment was the market value of that property as it stood there immediately before the railroad was constructed through it? "

Objected to, first, because the witness has not shown himself qualified to testify as to the value; second, because the question is confined to a small portion of the property described in the plaintiffs' claim for damages; and third, because the knowledge acquired in the manner in which the witness says he acquired his knowledge is not of the character to entitle him to testify as an expert.

Objection overruled. Bill sealed for defendant. [4]

H. A. Fisher, a witness for plaintiffs, stated that he had gone into the real estate business in 1889 and had known the property nearly ever since, and did not think that portion to right of Forbes street was affected.

Mr. Rodgers : " Q. Then, I call your attention to that portion of the property on the other side or the left-hand side of the street and ask you what, in your judgment, that piece of property as a whole was worth as it stood, just as it lay on the ground there, immediately before the railroad was constructed, it having been constructed about June, 1889.

Objected to, first, because the witness has clearly not shown himself to be qualified to give an opinion at that time ; and second, because the property described, and to which his attention is directed, is not all of that described in these proceedings.

The Court : The witness has not stated that he did know the value of property in that neighborhood.

Mr. Rodgers : " Q. Did you know the value of property in that neighborhood sufficiently to give an opinion as to its value ? A. I think I did, sir.   Q. Did you have any knowledge immediately before the railroad was constructed through that piece of ground ? A. I went in about the time that was constructed ; either a little before or a little after.   Q. And are you able to state the value of that property, from the knowledge that you had there as to other properties in the neighborhood ?   A. Yes, sir."

Mr. Carpenter, of counsel for defendant : The witness says he does not know whether he went into business before or after the railroad was constructed, and he did not make his inquiries until he went into business.   Now I submit that he has not shown himself competent to testify as to the values.

Mr. Rodgers : " Q. Did you know the value of the property in the neighborhood, or have enough knowledge to give an opinion, as the properties were immediately before this railroad was constructed, and that is said to be in June, 1889 ?   A. Yes, sir."

Mr. Carpenter : I renew my objection as to the witness's competency.

Objection overruled.   Bill sealed for defendant. [5]

H. A. Fisher, a witness for plaintiffs, on cross-examination, was asked this question by defendant.

" Q. Well, without a railroad there, that property would be just as good as it ever was ? "

Objected to by plaintiffs as not cross-examination. Objection sustained. Bill sealed for defendant. [6]

A. U. Beam, a witness for plaintiffs, having testified that he had known the property from about 1887, and that in his opinion that part to the right of Forbes street was not affected, was asked :

" Q. Now, calling your attention to that part of the property on the left-hand side of Forbes street over which this railroad is constructed, tell us what the value of that property was immediately prior to the construction of the railroad."

Objected to, because the witness has not shown himself competent to express an opinion as to the value of that ground in 1889, and second, because he cannot separate the one piece from the other in estimating the damages or the value.

Objection overruled. Bill sealed for defendant.

" Q. Did you know the value of property in that neighborhood immediately prior to the construction of the railroad? A. Yes, sir, I do from inquiry. I familiarized myself with the values in that neighborhood as we generally try to do all over the city." [7]

J. R. Cooper, a witness for plaintiffs, testified as follows :

" Q. Were you familiar with the value of property in that neighborhood in 1889, before the construction of this road? A. Only in a general way. Q. How did you acquire your knowledge? A. Well, from the depth and so on, and an improved street. I hadn't made any sales in there, and I don't know of any in there; I don't know of any that were made in there, except by private sale—made quietly. Q. Did you know the value of plaintiffs' property immediately before the construction of the road? A. Why, yes, I had a pretty good idea of the value in there. Q. Well, have you a sufficient idea to express an opinion? A. I can put a valuation on it. Q. Well, from your knowledge, as gained prior to 1889, what, in your opinion, was the value of the portion of the plaintiffs' property to the left of Forbes street immediately before the construction of the road ? "

Objected to, first, because the witness has not shown himself qualified to answer the question; and second, because he is

subdividing the property differently from what it is described in the petition and declaration in this case.

Objection overruled.  Bill sealed for defendant. [8]

L. K. Logue, having testified that he was acquainted with values, etc., "in a general kind of way," and had acquired his knowledge "just by traveling around and asking," and that he thought he could express an opinion, was asked by plaintiffs' counsel:

" Q. Will you tell the court and jury your opinion as to the value of that property immediately before the construction of the road ? "

Objected to, because the witness has not stated any facts on which to base an opinion, he having merely stated that he thinks he knows.

Objection overruled.  Bill sealed for defendant. [9]

F. G. Kay, a witness for defendant who had been examined at length, was asked whether the O'Brien property was on the market in 1888, and objection being made he was asked if there was a " For sale " sign on it.  This being objected to, the following offer by defendant, objection by plaintiffs, and rulings were made :

Well, without stating any prices, I propose to show by the witness on the stand, in contradiction of statements already made, that this property was on the open market in 1888, and I propose to follow it by the evidence of the market price of that property, at which it was held and offered for sale immediately prior to the entry of the railroad.

Mr. Rodgers : The offer as a whole is objected to as immaterial, irrelevant and incompetent.

The Court: What do you propose to contradict?

Mr. Carpenter: Allegations have been made here over and over again that this property was sold at private sale; that all these sales were made privately, and Mr. O'Brien gave the impression that the property was offered to him and that he had it under advisement for a long time ; and I propose to contradict that by showing that it was on the open market, and the price at which it was offered on the open market prior to this entry.

Mr. Rodgers : That portion of the offer now discussed by the defendant is objected to especially because any evidence of that character was elicited by himself on cross-examination.

The Court: Yes, there is not any evidence as to what was being done with this property after Messrs. O'Brien and Wright bought it in 1888, and they said they bought it at private sale, and that they had had a private offer for it for many years.

The objection is sustained. Bill sealed for defendant. [10]

Mr. Carpenter: I now propose to prove by the witness on the stand that the property in controversy, to wit: the portion of the land described in plaintiffs' petition and statement to the left of Forbes street, going east, was on the open market; that the price was an open price, and to prove what the value of the property was at that time, as placed on it by the then owner of it, and follow that by evidence that that was the full, fair market value of the property at that time.

Mr. Rodgers: Objected to as incompetent.

Objection sustained. Bill sealed for defendant. [11]

The court charged in part as follows:

[In arriving at the amount of the damage you will take into consideration the fact that this occupation was over nine years ago, and that the plaintiffs have been deprived of the use of this property for that length of time, and you will consider that in arriving at your verdict.] [13]

[Counsel has called my attention to it, and I may repeat, that in considering the question of benefits, if you find any, to this property, you consider the entire tract; and while there has been no evidence of damage to the property on the right of Forbes street, if you find that there has been any damage to that part on the right of Forbes street, you will consider that. You will consider the entire damage to the tract to the left and right of Forbes street.] [14]

Verdict and judgment for plaintiffs for $4,710. Defendant appealed.

*Errors assigned* among others were (3–11) rulings on evidence, quoting the bill of exceptions; (13, 14) above instructions, quoting them.

*J. McF. Carpenter*, with him *Edward F. Hays* and *Thomas A. Noble*, for appellant.—While the rule is rigidly enforced

which prevents a corporation having the right of eminent do-- main from showing a general benefit to the community, although inferentially evidence to that effect shows a benefit to the land immediately affected, it has never been permissible to divide a tract and show injury to one part. The recognized rule is certainly severe enough, and to allow a party to sever the injured part from that which is actually benefited, and assess damages to the one, excluding the other, is most inequitable and unjust. The wrong done by allowing witnesses to estimate damages to the injured part only is not cured by allowing other witnesses to testify as to the whole, or by charging the jury that it may consider the whole property : Schuylkill River, etc., R. R. Co. v. Stocker, 128 Pa. 233 ; Pittsburg, Virginia & Charleston Ry. Co. v. Vance, 115 Pa. 325 ; Allegheny v. Black, 99 Pa. 152.

It was error to allow witnesses to base their opinions on the " possibilities " of the property affected, without restriction or limitation.

An expert should never be permitted to answer the vital question, respecting which he is called upon to testify, until the court is satisfied that he is qualified, and this can only appear after he has stated the grounds on which he bases his opinion : Michael v. Crescent Pipe Line Co., 159 Pa. 99 ; Harris v. R. R. Co., 141 Pa. 242 ; Dawson v. Pittsburg, 159 Pa. 317.

*W. B. Rodgers*, with him *Joseph Stadtfeld*, for appellees.—We think that each of the witnesses whose testimony is referred to above were sufficiently qualified under the law, as declared by this court in many cases. The reasons argued in favor of the assignments go rather to the value or credibility of the testimony than to its admissibility : Lewis v. Springfield Water Co., 176 Pa. 236.

In determining the value of land appropriated for public use, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be, what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted ; that is to say, what it is worth from its availability for valuable uses : Boom Co. v. Patterson, 98 U. S. 403.

OPINION BY MR. JUSTICE GREEN, December 30, 1899:

The plaintiffs' statement of claim set forth the ownership of an entire property extending on both sides of Forbes street, giving all its courses and distances, with improvements, consisting of a two-story frame dwelling house and out buildings erected thereon. By the testimony it appeared that the whole tract contained about four and one half acres, of which about two and a half acres were on the left side of Forbes street without any buildings, and about two acres with the buildings were on the right side of the street. The defendant's railroad was located through the two and a half acre part of the tract, at a distance of about 160 feet back from Forbes street. The statement claimed damages to the entire property, and the verdict was general for $4,710, which must necessarily be considered as the sum representing the whole amount of damages sustained by the plaintiffs by reason of the location and construction of the railroad on the property as an entirety. Beyond all question no further claim for this cause can ever again be established for any part of this property. The claim for which the verdict was given is a unit, and it covers the whole of the property. As a matter of fact, it appeared on the trial that no damage whatever was inflicted upon the two-acre part lying on the right-hand side of Forbes street with the buildings on it. It was not only Forbes street which separated the two parts of the property, but a further distance of 160 feet of land lying on the opposite side of the street, and between it and the railroad. It was perfectly manifest that the location and construction of the road could not and did not affect the part of the property on the right side of Forbes street, and this was so testified by the plaintiffs and their witnesses, and no attempt was made to prove any damage to that part of the property. In these circumstances we cannot possibly see any objection to the admission of the testimony to prove what was the actual state of the facts, to wit: that the injury was confined to the part of the property through which the road was laid. If that part of the property was injured and the other part was not injured at all, why could not that fact be proved? We can see no reason why. We are clearly of opinion, therefore, that there was no merit in any of the objections that were urged upon the ground that the testimony showed injury only to a part of the property. If all the injury was confined to that part, and there was no injury to

the other part, it follows that the injury to the part that was affected was the injury to the whole. This disposes finally of the first and second assignments of error, and of the same matter appearing in nearly all the other assignments. The assignments from three to nine, both inclusive, question in part the competency of the several witnesses to express opinions as to the value of the property, on the ground that they did not show sufficient qualifications to give opinions. We have carefully examined the testimony in relation to the qualifications to testify of each one of these witnesses, and we are of opinion that they were all sufficiently qualified to testify, a number of them possessing not only an adequate knowledge of the property but an intelligent comprehension of the subject of their testimony, and an ability to fortify their conclusions with a statement of reasons quite above the average of this class of witnesses. These objections are not sustained in any instance.

An objection was made to a question put to Behen, one of the plaintiffs' witnesses, that he was asked to express an opinion of the value of the property, in view of its possibilities for being laid out in lots. The exact question to the witness was in these words: "What would you say was the fair value of the property as it stood immediately before the railroad was constructed; that would be in the summer of 1889? I don't want you to take into consideration the laying out into lots, but the possibilities that it could be done and the possibilities of developing the property." This was not an inquiry as to all the possible uses that could be made of the land, nor as to the erection of improvements, or the carrying on of business upon it, but merely an inquiry as to the value of the land, considering that it was possible to lay it out in lots. We think this was a proper question, and that it is positively ruled by our decision in the case of Wilson v. Equitable Gas Co., 152 Pa. 566. It must be borne in mind that the property in question was a rather large-sized piece of ground situate on a public street of a large city, this particular part of it without any buildings upon it, and manifestly capable of being laid out and sold in lots. We do not understand that an owner may not prove that fact as to property thus situated. On the contrary, such an obvious and advantageous use of the land situated as this is, would be a fundamental and essential feature in considering

what its market value would be.   If it were a piece of vacant land lying in the open country as part of a farm, with no indications of its being .marketable as town lots, the objection would be far more pertinent and would probably prevail.   But land situated and constituted as this was, its possible disposition as city lots was an essential feature of its value, and something which the owner had a right to submit to the jury. In the case referred to, Wilson v. Equitable Gas Co., this was the very essence of the inquiry, and numerous questions were asked as to how and why the property was capable of being laid out and sold in town lots. ° The witness was allowed to go very much further and in much more minute detail than was proposed in this case.   He was allowed to testify as to the manner in which it might be laid out, how many lots could be got out of it, the size of them, how they might be arranged so as to bring the best price, and how much they might produce in this way, and to what extent the price would or might be affected by the defendant's pipe line.   It was also the fact that this was farm land, and there was no laid out and opened street running through it.   Nevertheless we sustained the court below in allowing this testimony to go in.   PAXSON, C. J., delivering the opinion said: "Upon the trial below it is apparent that the defendant proceeded upon the theory that if the plaintiff's land, at the time of the appropriation, was used only as a farm, the inquiry was limited to the amount of damages, if any, sustained by the land as a farm, and the witnesses called by it in relation to the damages were examined upon that theory.   On the other hand it was contended by the plaintiff that the inquiry was not so limited, but that in estimating the market value of the land everything which gives it intrinsic value is to be taken into consideration, and is not to be limited to a particular use.   The learned judge below adopted the plaintiffs' view in this respect, and he is fully sustained by the authorities.   In Shenango & Allegheny R. R. Co. v. Braham, 79 Pa. 447, it was held, 'In estimating the market value of the land everything which gives it intrinsic value is a proper element for consideration. . . . It is its general market value for any purpose that will induce persons to purchase it; that is the true test.' . And in Allegheny v. Black, 99 Pa. 152, it was said: 'In estimating the market value of land everything

which gives it intrinsic value is to be taken into consideration, and it is not to be limited to a particular use.' To the same effect is Cummings v. City of Williamsport, 84 Pa. 472, Penn. Schuylkill Valley R. R. Co. v. Cleary, 125 Pa. 442, Schuylkill River, etc., R. R. Co. v. Stocker, 128 Pa. 233, and Harris v. Schuylkill River, etc., R. R. Co., 141 Pa. 242. In the latter case, it was said by our Brother MITCHELL, 'The true test is the difference between the value of the entire lot as it was immediately before the taking and the value of what was left of it after the taking. And in estimating the value of the lot before taking its possible and probable uses were important elements, and might be shown by the evidence of expert witnesses.' In view of these authorities, and especially in view of the fact that the corporation defendant was endeavoring to limit the inquiry to the value of the land as a farm, we think it was competent for the plaintiff to show that a portion of it was ripe for building improvements or for any other purpose that enhanced its value."

The foregoing authorities fully sustain the learned court below in ruling that the testimony offered was admissible. In point of fact the testimony was not given. The assignments of error from three to nine inclusive are dismissed.

There is no merit in the tenth and eleventh assignments. The evidence offered was not a contradiction of anything, and if the former owner placed a certain value upon the property, the best evidence of that fact would be that person's testimony to that effect. There was no objection to any proof of the value of the property at that time by any legitimate testimony on that subject.

As to the thirteenth and fourteenth assignments, of course, the court could not have intended to say that the plaintiffs were deprived of the use of any part of the property except what was occupied by the railroad. The jury could not have been misled as to this, especially as the court explicitly said to them it was only the part covered by the railroad that was kept from the possession of the plaintiffs. The language complained of in the fourteenth assignment is nothing but a restatement of the undoubted law of the case. The twelfth assignment is not pressed and has no merit.

Judgment affirmed.